UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARYN KAYE KILLIAN,

     Plaintiff,                       Case No. 2:20-cv-13345

                                         District Judge George Caram Steeh

v.                                Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.     Introduction

This is a social security case.  Plaintiff Karyn Kaye Killian ("Killian") brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the Act). Both parties have filed summary judgment motions (ECF Nos. 17, 18), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, substantial evidence supports the Administrative Law Judge's (ALJ's) conclusion that Killian is not disabled under

the Act.  Accordingly, it is RECOMMENDED that the Commissioner's Motion for

Summary Judgment (ECF No. 18) be GRANTED, Killian's Motion for Summary

Judgment (ECF No. 17) be DENIED, and that the ALJ's decision be AFFIRMED.

II.      Background

A.     Procedural History

Killian was 52 years old at the time of her alleged onset date of October 1,

2018.  (ECF No. 13, PageID.203).  She graduated from high school and previously

worked in the medical care field as a residential care aide and residential

technician.  (*Id*., PageID.226).  Killian alleges disability due to depression, anxiety,

Post Traumatic Stress Disorder (PTSD), bipolar disorder, Irritable Bowel

Syndrome ("IBS"), fibromyalgia, degenerative disc disease of the lower back, and

diverticulitis.  (*Id*., PageID.225).

After Killian's application was denied at the initial level on September 4,

2019 (*Id*., PageID.127), she timely requested an administrative hearing, which was

held on April 7, 2020.  (*Id*., PageID.76).  The hearing was held telephonically due

to COVID-19.  (*Id*., PageID.62).  Killian, who was represented by counsel,

testified at the hearing, as did a vocational expert (VE).  (*Id*., PageID.84-100).

Killian offered the following testimony at the hearing.  She had been living

with her father since her house burned down six months earlier.  (*Id*., PageID.84,

88).  She drove approximately twice a month.  (*Id*., PageID.85).  A January 2019

work attempt had been unsuccessful due her inability to take care of others because

of her own "chaotic" mental state.  (*Id*., PageID.86).  She lacked the ability to

concentrate and lacked motivation for work.  (*Id*., PageID.87).  The stress of

working exacerbated the condition of diverticulosis causing periodic incontinence.

(*Id*.).  She needed to be near a bathroom at all times.  (*Id*., PageID.91).  She

received therapy twice a month for clinical depression.  (*Id*., PageID.87).  She took

psychotropic medication and medication for hypertension as prescribed.  (*Id*.).  Her

medication contributed to her lack of energy and lack of motivation.  (*Id*.,

PageID.92).  She experienced panic attacks around three times a week which were

characterized by shortness of breath and pounding heart.  (*Id*., PageID.91).

Due to her fear of crowds, Killian relied on family members to grocery shop

or order deliverable groceries.  (*Id*., PageID.88).  She injured her shoulder while

getting onto a boat the previous Independence Day weekend.  (*Id*., PageID.89).

She used a smart phone to follow church services online.  (*Id*.).  She sustained

injuries chasing her dog.  (*Id*., PageID.90).  She was responsible for feeding the

dog, but her father let the dog out.  (*Id*.).  She stood 5'4" and weighed 240 pounds.

(*Id*.).  In addition to the other physical conditions, she experienced semi-monthly

swelling of the hands, feet, and right knee due to gout which lasted around two

days.  (*Id*., PageID.92).  She also experienced chronic back pain due to a childhood

injury.  (*Id*., PageID.93).  She did not experience lasting relief from steroid injections.  (*Id*.).

She was unable to sit for more than 30 minutes at a time or stand for 20.  (*Id*., PageID.94).  She was unable to walk further than one block or lift/carry more than 10 pounds.  (*Id*.).

On July 6, 2020, the ALJ issued a written decision finding that Killian was not disabled.  (*Id*., PageID.62-71).  On November 10, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (*Id*., PageID.48-50).  Killian timely filed for judicial review of the final decision on December 22, 2020.  (ECF No. 1).

## B.    Medical Evidence

July 2018 records from Caro Health Plaza, which pre-date the onset date, note "gout-like pain/redness."  (ECF No. 13, PageID.508).  The same records note the conditions of generalized neuropathy, ulnar neuropathy, fibromyalgia, sciatica, and gait disturbance.  (*Id*.).  Killian appeared fully oriented.  (*Id*., PageID.508).

A January 2019 CT scan of the abdomen was consistent with colonic diverticulosis "without findings to suggest acute diverticulitis."  (*Id*., PageID.336-337).  An April 2019 MRI showed moderate osteoarthritis of the right knee with moderate effusion.  (*Id*., PageID.481).

In August 2019, psychiatrist J.T. Aills, M.D. performed a behavioral assessment of Killian, noting "racing thoughts" and "stuttering."  (*Id*., PageID.693).  He noted that Killian was currently not working and spent most of her time at home.  (*Id*.).  He noted that she was able to pay bills and drive.  (*Id*.). He opined that Killian was unable to work "at [that] time" and gave her a "sick leave extension" for an additional three months.  (*Id*., PageID.690, 693-694).  A medication review noted a partial response to medication and treatment.  (*Id*., PageID.687).

Later the same month, in August 2019, Colette M. Simone Psy.D. performed a non-examining review of the mental health records on behalf of the SSA, concluding that Killian experienced moderate limitation in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself as a result of depression and anxiety.  (*Id*., PageID.113-114).

Also in August 2019, Robert Nelson, M.D. performed a non-examining review of the records pertaining to Killian's physical conditions.  Dr. Nelson concluded that Killian could lift/carry 10 pounds frequently and 20 pounds occasionally; sit, stand, or walk for about six hours in an eight-hour workday; and push/pull without limitation in the upper extremities but with limitations of the lower extremities.  (*Id*., PageID.115-117).  Dr. Nelson found that Killian was limited to frequent climbing of ramps/stairs and balancing but otherwise limited to

occasional postural activity. (*Id*., PageID.115-116). He further found that she should avoid concentrated exposure to wetness and vibration and avoid even moderate exposure to hazards such as machinery or heights. (*Id*., PageID.116).

Dr. Aills' October 2019 records note that Killian's house "burned down" that month and that her father's mental state was "declining . . . rapidly." (*Id*., PageID.686). Physical therapy records from the same month note Killian's report of difficulty lifting and reaching with the left arm. (*Id*., PageID.599). She reported injuring her left shoulder while attempting to hoist herself onto a boat. (*Id*., PageID.598). She denied limitations in weight bearing. (*Id*.). Records from the following month show a partial reduction in pain and increased strength and range of motion. (*Id*., PageID.574). December 2019 records by Dr. Aills state that Killian was "[probably] bipolar – but only takes pot."[1] (*Id*., PageID.685). Killian reported that interacting with her insurance company was a "hassle;" her mother was approaching death; and that in 2003, her husband was killed in a motor vehicle accident. (*Id*.). Dr. Aills noted a low mood and anxiety. (*Id*.).

January 2020 records by Ascension Medical Group Orthopedics note the conditions of left shoulder pain, gout, IBS, right knee pain, and migraines. (*Id*., PageID.566). Plaintiff reported left shoulder and arm pain since a July 2019 boat

---

[1]It is unclear if Dr. Aills was merely restating Killian's self-assessment or actually speculating that Killian was bipolar.

accident.  (*Id.*).  Treating records note that an MRI of the left shoulder suggested a muscle tear.  (*Id.*).  Follow-up imaging studies were negative for tearing but showed mild degenerative changes of the acromioclavicular joint.  (*Id.*, PageID.609).

March 2020 records by Dr. Aills state that Killian was upset because her son took her car without asking and "totaled it."  (*Id.*, PageID.683).

Also in March 2020, treating therapist Angela Gauthier, LMSW reported a diagnosis of major depressive disorder "recurrent moderate."  (*Id.*, PageID.745).  She noted that she had treating Killian since October 2018.  (*Id.*).  She noted the symptoms of lack of motivation, excessive sleep, racing thoughts, and feelings of hopelessness.  (*Id.*).  She found that Killian lacked the motivation to care for her personal needs.  (*Id.*).  She noted that Killian's condition had not improved with therapy and that Killian was unable to hold full time employment.  (*Id.*, PageID.746).

Gauthier also completed a "Mental Impairment Questionnaire," stating that Killian would be required to miss more than four days of work each month; would be distracted by psychological symptoms at least 20 percent of the workday; and would require unscheduled breaks for at least 20 percent of the workday.  (*Id.*, PageID.732).  She found further that Killian would be unable to handle even minimal changes in the work routine and would be distracted by others at least 20

percent of the workday.  (*Id*.).  She noted that Killian was unable to leave her home on a regular basis and spoke with a stutter.  (*Id*., PageID.733).

     III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

8

> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and work
> experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D.

Mich. Oct. 31, 2008), citing 20 C.F.R. § 404.1520; *see also Heston v. Comm'r of*

*Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the

claimant throughout the first four steps. . . .  If the analysis reaches the fifth step

without a finding that claimant is not disabled, the burden transfers to the

[Commissioner]."  *Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110

(6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Killian was

not disabled under the Act.  At Step One, the ALJ found that Killian had not

engaged in substantial gainful activity from October 1, 2018 through the July 6,

2020 administrative decision.  (*Id*., PageID.64).

At Step Two, the ALJ found that she had the severe impairments of

degenerative joint disease, knees; left shoulder impairment; degenerative disc

disease; anxiety; depression and PTSD.  (*Id*.).  She found that the conditions of

hypertension, GERD, diverticulitis,[2] gout, osteoporosis, obesity, chronic fatigue

---

[2]As noted above and as will be explained below, Killian was diagnosed with
*diverticulosis*, not *diverticulitis*.  The ALJ's reference to *diverticulitis* appears to be
a scrivener's error

syndrome, and migraines did not cause "more than minimal workplace limitations." (*Id.*, PageID.65).

At Step Three, the ALJ found that Killian's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment. (*Id.*, PageID.65-66).

The ALJ then assessed Killian's RFC, concluding that she was capable of performing exertionally light work with the following limitations:

> [She] can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop occasionally, kneel occasionally, crouch occasionally and crawl occasionally. The claimant can never work at unprotected heights, never with moving mechanical parts, in humidity and wetness or concentrated wetness, and never around vibration. She is able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. no assembly line work). The claimant can make simple work-related decision and deal with simple changes in the work setting. The claimant can interact with the public occasionally.

(*Id.*, PageID.66).

At Step Four, the ALJ found that Killian was unable to perform any past relevant work. (*Id.*, PageID.69). At Step Five, the ALJ cited the VE's job testimony to support the finding that Killian was capable of performing the light, unskilled jobs of cleaner (700,000 positions in the national economy); administrative support clerk (250,000); and sorter (350,000). (*Id.*, PageID.70, 98).

IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision under 42 U.S.C. § 405(g).  Although the court can examine

portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health*

*& Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial

review is constrained to deciding whether the ALJ applied the proper legal

standards in making his or her decision, and whether the record contains

substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec*., 775

F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts

of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec*.,

880 F.3d 778, 783 (6th Cir. 2017) (same).

An ALJ's factual findings must be supported by "substantial evidence."  42

U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains sufficient evidence
> to support the agency's factual determinations.  And whatever the
> meaning of substantial in other contexts, the threshold for such
> evidentiary sufficiency is not high.  Substantial evidence, this Court has
> said, is more than a mere scintilla.  It means—and means only—such
> relevant evidence as a reasonable mind might accept as adequate to
> support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the

judiciary's ability to review decisions by administrative agencies, but it does not

grant courts the right to review the evidence de novo. *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them. *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must " 'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

V.    Analysis

In seeking summary judgment in the form of remand, Killian makes two arguments.  First, she argues that the ALJ erred by finding that the conditions of diverticulosis, gout, fatigue, and osteoarthritis did not create significant work-related limitations.[3]  (ECF No. 17, PageID.884).  Second, she argues that that the RFC for a significant range of light work does not reflect her full degree of physical limitation.[4]  (*Id*., PageID.892).

The Commissioner argues that substantial evidence (or the lack thereof) supports the ALJ's findings that the conditions of diverticulosis, gout, chronic fatigue, and osteoarthritis were non-severe and/or did not last the 12-month period

_____

[3]Killian uses the terms diverticulosis and diverticulitis interchangeably.  *Compare* (ECF No. 17, PageID.884, 888).  But the conditions are not the same. "Diverticulosis is 'the presence of' and diverticulitis is 'inflammation and infection of' one or more diverticula (bulges in your colon wall).  Diverticulosis is common, doesn't cause symptoms or need treatment."  https://my.clevelandclinic.org /health/diseases/10352-diverticular-disease.  (Last visited April 18, 2022).  The treating records show that Killian experienced diverticulosis, not diverticulitis. While Killian cites a January 2019 CT scan to show that she has diverticulitis, the scan explicitly states that she experienced "diverticulosis *without diverticulitis*." (ECF No. 13, PageID.337) (emphasis added).

[4]While Killian begins her second argument by stating that the ALJ failed to evaluate the "mental impairments," she goes on to list the physical conditions that she contends that the ALJ overlooked and does not otherwise refer to the psychological conditions.  To the extent that the reference to "mental impairments" could be construed as an argument, the undersigned declines to address it. *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

required to show a work-related impairment.  (ECF No. 18, PageID.916-919).  The

Commissioner further argues (contrary to Killian's assertions) that the RFC was

not required to reflect the alleged limitations resulting from the short-lived

conditions.  (*Id*., PageID.920-924).

### A.    The Step Two Findings

#### 1.    Applicable Law

At Step Two, an "impairment or combination of impairments . . . [is] found

'not severe' . . . when medical evidence establishes only a slight abnormality or [ ]

combination of slight abnormalities which would have no more than a minimal

effect on an individual's ability to work."  SSR 85-28, 1985 WL 56856, at *3

(1985).  "In the Sixth Circuit, the severity determination is 'a *de minimis* hurdle in

the disability determination process.' "  *Anthony v. Astrue*, 266 F. App'x 451, 457

(6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  "The

goal of the test is to 'screen out totally groundless claims.' "  *Id*.  (quoting *Farris v.*

*Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)).  20 C.F.R. §§

404.1522(a) defines a non-severe impairment as one that does not "significantly

limit [the] physical or mental ability to do basic work activities."  *See also* SSR 85-

28, supra, at *3 ("Basic work activities" include "walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling" and "seeing, hearing, and

speaking.")  "[T]he term 'significantly' is liberally construed in favor of the

claimant." *Wilder v. Berryhill*, No. 1:17CV2609, 2019 WL 1428215, at *4 (N.D.

Ohio Mar. 29, 2019).

### 2.    The ALJ's Findings

The ALJ found that the conditions of degenerative joint disease of the

knees, left shoulder impairment, degenerative disc disease, anxiety, depression,

and PTSD were severe impairments.  (ECF No. 13, PageID.64).  She

acknowledged the medically determinable conditions of hypertension, GERD,

diverticulitis,[5] gout, osteoporosis, obesity, chronic fatigue syndrome and migraines

but provided the following rationale for the conclusion that those conditions were

non-severe:

> [T]he claimant reported her blood pressure had slowly been coming
> down.  The claimant had normal cardiovascular examinations.  The
> claimant complained of isolated gastrointestinal symptoms that were
> treated symptomatically.   The claimant's primary care provider
> indicated the claimant's gout was mild.  The claimant has a history of
> migraines that have improved.  The claimant's body mass index is
> above 40 but she has been able to lose weight.  The claimant's chronic
> fatigue syndrome does not prevent her from walking for exercise.  The
> claimant has not experienced any significant bone injury related to
> osteoporosis even though she fell when chasing her dog.

(*Id.*, PageID.65) (internal citations omitted).  The ALJ observed elsewhere

that Killian had fluid drained from her right knee and that an MRI of the

knee showed mild osteoarthritis.  (*Id.*, PageID.67).  She acknowledged the

---

[5]As noted above, the ALJ's reference to *diverticulitis* instead of diverticulosis
appears to be a scrivener's error.

July 2019 shoulder injury but noted that the condition had improved with

physical therapy.  (*Id*.).  She cited an orthopedist's recommendation of only

conservative treatment for the knee and shoulder conditions.  (*Id*.).

She noted that in spite of the back and joint conditions, Killian could engage

in water sports, walk for exercise, and "chase her dog."  (*Id*.).

### 3.    The Step Two Findings Do Not Warrant a Remand

The ALJ's finding that a number of the conditions were non-severe is well

supported by the record.  As to the condition of diverticulosis,  a CT scan

performed in January 2019 showed that the condition was non-inflammatory.

(ECF No. 13, PageID.337).  While Killian reported occasional diarrhea between

April and June 2019 (*Id*., PageID.399, 434, 748), the subsequent records do not

suggest that the condition was active or otherwise support Killian's claim of

chronic incontinence.

While records predating the alleged onset of disability by three months note

"gout like pain/redness," the medical evidence from the relevant period does not

support that the condition was ongoing.  (*Id*., PageID.507).  Thus, despite Killian's

claim that she experienced symptoms of gout up to four days a month (*Id*.,

PageID.92-93), the ALJ did not err in finding that gout was not a severe

impairment.  *See Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 118–

119 (6th Cir. 1994) (ALJ not required to incorporate unsupported claims in hypothetical question to VE or by extension, RFC).

The ALJ likewise did not err in finding that the condition of chronic fatigue syndrome did not cause significant work-related limitation. To be sure, medical evidence predating the alleged onset of disability show a diagnosis of chronic fatigue. (*Id*., PageID.507, 512, 518). However, records from the relevant period refer to fatigue only twice – May and December 2019. (*Id*., PageID.434, 737). The ALJ also noted that the condition did not prevent Killian from walking for exercise. (*Id*., PageID.65). While the psychological treating records make reference to Killian's "excessive sleep," (*Id*., PageID.745), this finding was adequately addressed in the ALJ's discussion of the psychological symptoms, which note that while Killian alleged fatigue, she was able to care for her elderly father. *See id*., PageID.66.

As to the conditions of the knee (osteoarthritis) and the shoulder impairment, the Commissioner correctly notes that both conditions were listed among the "severe" impairments. First, the ALJ included the condition of "degenerative joint disease" of the knees at Step Two. (*Id*., PageID.64). The January to April 2019 records show that while Killian reported "mild" right knee pain, she demonstrated a full range of motion and full strength. (*Id*., PageID.493-494). Treating records made later the same month following an injection showed no swelling. (*Id*.,

PageID.498).  An x-ray was negative for abnormalities.  (*Id*., PageID.355).

Despite Killian's report that her knee "gave out" later the same month, she

demonstrated a full range of motion and was prescribed only conservative

treatment.  (*Id*., PageID.309-310).  An April 2019 MRI showed osteoarthritis but

was negative for tears.  (*Id*., PageID.428).  Killian declined further treatment.  (*Id*.,

PageID.801).

Killian's implied argument that the ALJ did not acknowledge the left

shoulder condition caused by the July 2019 boat accident is contradicted by the

inclusion of "left shoulder impairment" among the severe impairments at Step

Two.  (*Id*., PageID.64).  To the extent that Killian argues that the later steps of the

ALJ's analysis do not adequately account for the shoulder limitations, the records

following the September 2019 reinjury show improvement with physical therapy

and January 2020 imaging studies show the absence of a muscle tear.  (*Id*.,

PageID.568, 574, 604, 607, 609).  The records do not show additional shoulder

treatment after January 2020.

Because the exclusion of the conditions of diverticulosis, gout, chronic

fatigue syndrome, and osteoarthritis from the "severe" impairments is well

supported and adequately explained, a remand on this basis is not warranted.

B.     The RFC

Building on her first argument, Killian argues that even assuming the ALJ did not err in finding a number of the conditions non-severe, she failed to create an RFC reflecting both the severe and non-severe impairments as required by SSR 96-8p, 1996 WL 374184 at *5 (July 2, 1996) (ALJ must consider the impairments that are not "severe" as well as the severe impairments in crafting the RFC); 20 C.F.R. § 404.1529 (same).  (ECF No. 17, PageID.892-893).

In turn, the Commissioner argues that Killian has not shown that any of the conditions at issue lasted or could be expected to last 12 months or longer.  (ECF No. 18, PageID.922) (quoting 20 C.F.R. § 404.1509) (to be factored into the disability determination, "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").  (*Id*., PageID.922-923) (quoting *Ortiz-Rosando v. Comm'r of Soc Sec.*, 12 F. App'x 349, 352 (6th Cir. 2001) ("The ALJ was not required to include [limitations in pushing, pulling, and carrying] in his hypothetical question" and by extension the RFC "because the record indicates that it did not meet the twelve-month duration requirement.").

The Commissioner is correct that the RFC need not reflect the conditions of diverticulosis, gout, chronic fatigue, or osteoarthritis because the evidence does not support the conclusion that the conditions lasted 12 months.  At best, the records show that the condition of diverticulosis/IBS was active between January and June

2019.  (ECF No. 13, PageID.337, 399, 434, 748).  The subsequent records do not suggest that the condition was active or otherwise support the claim of chronic incontinence.  *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (failure to seek additional treatment undercuts claims that condition created work-related limitation).  As discussed above, Killian's brief treatment for gout predated the alleged onset of disability altogether and the records for the relevant period do not support her claim that she experienced symptoms of the condition four days every month.  Likewise, the records for the relevant period do not indicate that Killian received treatment for chronic fatigue syndrome.  As to the right knee pain, the records showing treatment for this condition begin in January 2019 and ended in April 2019.  (*Id*., PageID.312, 428, 801).  The left shoulder problems began in July 2019 and the record does not show additional shoulder treatment after January 2020.  Killian's overlapping claim that the hypothetical question to the VE forming the basis of the job testimony did not reflect the non-severe impairments fails for the identical reasons; the hypothetical question need not include limitations failing to meet the 12-month durational requirement.  *See Ortiz-Rosando*, *supra,* 12 F. App'x at 352.

Finally, Killian argues that the ALJ erroneously relied on her boat accident and injury while catching her runaway dog to show support the non-disability finding.  (ECF No. 17, PageID.900) citing (ECF No. 13, PageID.67-68).  While the

20

ALJ's reference to Killian's ability to engage in "water sports" may overstate Killian's attempts to merely step onto a boat, the ALJ did not rely solely on her "water sports" finding in determining disability.  Rather, the ALJ provided a fulsome discussion of the treatment records, clinical observations, and imaging studies supporting her determination.  Likewise, while Killian notes that her one-time dog chase (resulting in an exacerbation of the original shoulder injury) should not be used to support the non-disability finding, the ALJ findings are based on the clinical and imaging studies.  Notably, while neither the knee nor shoulder problem met the 12-month durational requirements, the ALJ discussed both conditions extensively and the RFC reflects the limitations brought about by both conditions, including  limiting lifting to 20 pounds lifting occasionally and only occasional postural activity.  *See* ECF No. 13, PageID.66-67.

### C.     In Sum

The recommendation to uphold the ALJ's decision should not be read to trivialize the family and situational stressors experienced by Killian during the relevant period.  However, substantial evidence in the record supports a finding that Killian's impairments did not render her disabled within the meaning of the Act.  Because the ALJ's determination was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.  *Blakley, supra,* 581 F.3d at 406.

VI.    Conclusion

For the reasons set forth above, it is RECOMMENDED that the

Commissioner's motion be GRANTED, Killian's motion be DENIED, and that

under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be

AFFIRMED.

Dated: April 21, 2022                         s/Kimberly G. Altman
Detroit, Michigan                             KIMBERLY G. ALTMAN
                                              United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Hum. Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 21, 2022.

<u>s/Carolyn Ciesla</u>
CAROLYN CIESLA
Case Manager